**HAMMOND LUMBER COMPANY**

v.

**FINANCE AUTHORITY OF MAINE et al.**

Supreme Judicial Court of Maine.

Argued Nov. 12, 1986.
Decided Feb. 11, 1987.

Bernstein, Shur, Sawyer & Nelson Lee K. Bragg, Augusta, Bernstein, Shur, Sawyer & Nelson Edward J. Kane (orally), Portland, for plaintiff.

Verrill & Dana, Michael T. Healy (orally), Augusta, for Lombard & Millett.

Verrill & Dana, Timothy S. Keiter, Portland, Logan, Kurr & Hemilson, Michael S. Haenn (orally), Bangor, for Finance Authority of Maine.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Hammond Lumber Company (Hammond) appeals from a judgment of the Superior Court, Kennebec County, dismissing for lack of standing its petition for review of a final agency action by the Finance Authority of Maine (Authority). Although we agree with Hammond that it had standing to seek review, our own careful direct review of the administrative record reveals that the Authority's action was justified by the evidence before it and that the Authority acted within its discretion in declining to disclose certain documents to Hammond. Therefore we vacate the Superior Court's dismissal of Hammond's petition and remand for entry of judgment affirming the Authority.

In March, 1985, the City of Augusta submitted an application under the Municipal Securities Approval Program to the Authority to obtain approval for the financing of the construction of a large facility (project) by Western Avenue Associates (Western) on Western Avenue in Augusta.[1] Western intended to lease the facility to Augusta Lumber Company (Augusta Lumber) for use in the wholesale and retail lumber business. The estimated cost of the proposed facility was $557,000, of which Western requested $500,000 in funding through municipal revenue obligation securities. Pursuant to 10 M.R.S.A. § 1063(1) (Supp.1986),[2] notice of the application was given to the public generally and specifically to all known competitors of Augusta Lumber, one of which was Hammond.

At a public hearing in June, 1985, held by the Authority before deciding whether to approve the project, Hammond appeared in opposition to the project, presented evidence and requested access to all the documents submitted by Western in support of its application in order fully to develop its opposition. Acting under 10 M.R.S.A. § 1063(2)(B),[3] the Authority, finding that Hammond had presented its objections with "reasonable specificity and persuasiveness," released to Hammond a copy of the building plans for the proposed facility and a summary of the then current sales of Augusta Lumber. The Authority released no other information to Hammond.

After hearing, the Authority issued a certificate of approval for the project and made certain findings and conclusions in accordance with 10 M.R.S.A. § 1063(2).[4]

1. The City of Augusta had, by resolution of its City Council, agreed to issue revenue obligation securities for $500,000 to finance the project for Western.

2. 10 M.R.S.A. § 1063(1) provides in pertinent part:
   The authority shall publish, once in the state newspaper and in a newspaper of general circulation in the municipality in which the project is to be located, notice of the date on which the authority will consider the application. The notice shall be published at least 7 days prior to the date scheduled for such consideration, shall set forth the name of the municipality and the proposed user of the project, describe generally the project and set forth the time and place at which the application will be consideɪed. In addition to the notice required to be published by the authority, the applicant shall make all reasonable efforts to give timely notice to any and all known competitors of the time and place at which the application will be considered.

3. 10 M.R.S.A. § 1063(2)(B) reads in pertinent part:
   If any such party [objecting to the project] presents such objections with reasonable specificity and persuasiveness, the authority may divulge whatever information concerning the project which it deems necessary for a fair presentation by the objecting party and evaluation of such objections.

4. 10 M.R.S.A. § 1063(2) reads in pertinent part:
   **Criteria.** Before issuing a certificate of approval for any project, the authority shall determine that:
   A. The project will make a contribution to the economic growth of, the control of pollution in or the betterment of the health, welfare or safety of the inhabitants of the State;
   B. The project will not result in a substantial detriment to existing business in the State. In

The Authority found specifically that the project would make a significant contribution to the economic growth of the State of Maine and that the project would not result in substantial detriment to existing industry in the state. Finding that the statutory criteria were satisfied, the Authority issued its certificate of approval on July 26, 1985.

Pursuant to M.R.Civ.P. 80C and 5 M.R.S.A. §§ 11001 and 11002 (1979 & Pamph. 1986), Hammond filed a petition in the Superior Court, seeking review of the Authority's action approving Western's project. In Count I Hammond alleged that the Authority's findings were not supported by substantial evidence in the record. In Count II, Hammond asserted that the Authority had unlawfully refused to release the application and supporting documents to Hammond, and that the Authority's refusal prevented Hammond from adequately presenting its objections to the project to the Authority.

After reviewing the entire record and finding that Hammond had demonstrated neither actual nor potential particularized injury by virtue of the Authority's action, the Superior Court granted Western's motion to dismiss for lack of standing. In response to Hammond's motion to amend the judgment brought pursuant to M.R. Civ.P. 59(e), the court held that the dismissal applied to both Counts I and II. The court added that, based upon a review of the entire record, the Authority did not abuse its discretion in refusing to release more documents to Hammond. This appeal followed.

We agree with Hammond that it met minimum standing requirements and that the Superior Court's dismissal of the petition was error, but upon our own direct review of the administrative record we conclude that the Authority's findings of fact were based on substantial evidence in the record and that its certificate of approval for the project was properly issued. As to Hammond's access to documents, the Superior Court correctly determined that the Authority acted within its discretion in limiting the information provided to Hammond.

## I. STANDING

■ The Superior Court, in dismissing Hammond's petition, determined that Hammond lacked standing to bring the matter before the court in that Hammond was not a person "aggrieved" within the meaning of 5 M.R.S.A. § 11001. A person is aggrieved within the meaning of 5 M.R.S.A. § 11001 if that person has suffered particularized injury, *Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me.1984), the agency action "operat[ing] prejudicially and directly upon a party's property, pecuniary or personal rights." *Jamison v. Shepard*, 270 A.2d 861, 862–63 (Me.1970).

■ Hammond, a competitor of Augusta Lumber, was a party to the proceedings before the Authority,[5] and its petition can be fairly read to allege: 1) that the project approved by the Authority is primarily retail in nature and thus that the

order to make this determination, the authority shall consider, pursuant to rules adopted in accordance with the Maine Administrative Procedure Act, Title 5, chapter 375, subchapter II, such factors as it deems necessary to measure and evaluate the effect of the project on existing business, including considering:

(1) Whether a project should be approved if, as a result of the project, there will not be sufficient demand within the market area of the State to be served by the project to employ the efficient capacity of existing business; and

(2) Whether any adverse economic effect of *the project* on existing business is outweighed by the contribution which the project will make to the economic growth of, the control of pollution in or the betterment of the health,

welfare or safety of the inhabitants of the State.

The applicant shall have the burden of demonstrating that the project will not result in a substantial detriment to existing business in accordance with the requirements of this paragraph, including rules adopted in accordance therewith, except in cases where no interested parties object to the project, in which event the requirements of this paragraph shall be deemed satisfied.

5. Being a party during the proceedings before the agency is an essential criterion for standing. *Anderson v. Commissioner of Department of Human Services*, 489 A.2d 1094, 1097 n. 6 (Me. 1985). There is no dispute in this case that Hammond was a party before the Authority.

agency action directly contravenes 10 M.R.S.A. § 1061–A(1); 2) that the project would result in substantial detriment to Hammond, which is part of existing industry; and 3) that the project would result in insufficient demand for lumber products in the greater Augusta area, adversely affecting the efficient capacity of Hammond and other existing lumber businesses.

Although these allegations are conclusory in nature and lack specificity, they are minimally sufficient to withstand a motion to dismiss the petition based on standing alone. The Municipal Securities Approval Act requires that special notice of the application and hearing be given to competitors of businesses seeking to invoke the benefits of municipal industrial revenue bonds and contemplates their participation at the agency level. *See* 10 M.R.S.A. § 1063(1). Approval can be granted only if the Authority finds, among other things, that the project will not result in a substantial detriment to existing business in the state. 10 M.R.S.A. § 1063(2)(B). In considering whether there is such a detriment, the Authority must consider the demand within the market area of the benefited business and its effect on the capacity of existing competitor businesses, 10 M.R.S.A. § 1063(2)(B)(1), and weigh any adverse effect of the project on existing business against the economic benefits to be gained, 10 M.R.S.A. § 1063(2)(B)(2). There is no better way to effectuate the statutory purposes than for competitive businesses like Hammond to participate at the agency level and, if necessary, to challenge the Authority's actions by seeking direct judicial review.

## II. SUFFICIENCY OF THE EVIDENCE

Hammond alleged in Count I of its petition that the findings of the Authority were prejudicial to its business interest and not based on any substantial evidence. Specifically, Hammond asserted that the project was primarily retail in nature,[6] would not make a significant contribution to the economic growth of the state, would result in substantial detriment to existing industry, and that there was insufficient demand in the area to employ the efficient capacity of existing industry. *See* 10 M.R.S.A. § 1063(2).

■ Findings of fact made by an administrative agency must be upheld if supported by substantial evidence in the record. 5 M.R.S.A. § 11007(4)(C)(5) (1979); *Gulick v. Board of Environmental Protection*, 452 A.2d 1202, 1207–08 (Me.1982). In reviewing administrative agency action, this court can directly review the administrative record in exactly the same manner as the Superior Court, and need not remand the case to the Superior Court for its review of that record. *Gulick*, 452 A.2d at 1209 n. 6; *City of Bangor v. A.F.S.C.M.E., Council 74*, 449 A.2d 1129, 1134–35 (Me. 1982); *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me.1982). A careful review of the entire record in this case demonstrates that the Authority had substantial evidence upon which to base its findings.

■ The Authority justifiably found that the project would result in the retention of 25 existing jobs and the creation of 8 new positions, would add to and diversify the tax base of the City of Augusta, a community with many non-taxpaying government facilities, and would make a significant contribution to the economic growth of the State of Maine. 10 M.R.S.A. § 1063(2)(A).

Although Hammond asserted that the retail sales of Augusta Lumber would dramatically increase at its new location, in violation of 10 M.R.S.A. § 1061–A(1), there was substantial evidence concerning Augusta Lumber's past business and future intentions to justify the Authority's finding that less than 25% of the proceeds of the

---

**6.** Under 10 M.R.S.A. § 1061–A(1) revenue obligation securities may not be used to finance projects "the principal element of which, as determined by the authority, is one or more stores primarily used in making retail sales of consumer goods for household use to customers who personally visit the stores to obtain the goods." The Authority has determined that a project is a retail store if 25% or more of the proceeds of the securities is intended to be used for retail sales.

securities would be used for retail sales space.

In concluding that the project would not result in substantial detriment to existing businesses under 10 M.R.S.A. § 1063(2)(B), the Authority considered whether the demand within the market area would be sufficient to employ the efficient capacity of existing businesses, *see* 10 M.R.S.A. § 1063(2)(B)(1), and balanced the contribution the project would make to the economic growth of the state against any adverse economic effect of the project on those businesses, *see* 10 M.R.S.A. § 1063(2)(B)(2). The evidence showed that Augusta Lumber was a going concern that, as a result of the project, was to operate from a new facility. The Authority found that as a result of the project, Augusta Lumber would not be intruding into a market that it currently did not serve, and further found that the project would not affect the share of the market that Augusta Lumber then had.

Nothing Hammond presented persuasively suggested otherwise. In fact, Hammond presented no compelling evidence at all of its suffering any detriment as a result of the project. Hammond complained of the advantage to be realized by Augusta Lumber from interest savings resulting from municipally issued industrial bonds, contending such interest savings would allow Augusta Lumber to undercut detrimentally its competitors in pricing. An examination of the record before the Authority discloses that Hammond presented nothing more than its speculative and generalized conclusions as to the connection between the interest Augusta Lumber was to save on the issuance of the bonds and its ability to charge lower prices.

Damage to a competing business from its competitor's savings on interest payments must be actual. Such savings do not result per se in an unlawful advantage. Indeed, such savings on interest resulting from the issuance of municipal industrial revenue securities are contemplated by and are part of the purpose of the Municipal Securities Approval Program. In addition, in this case, the Authority found that the modest advantage from savings on interest payments to be realized by Augusta Lumber was offset by higher mortgage payments and costs of occupying the new facility. The Authority also found that any detriment caused by the project would be outweighed by benefits to the economic health of the state. *See* 10 M.R.S.A. § 1063(2)(B)(2). We conclude that the Authority's findings are supported by substantial evidence in the record.

### III. DENIAL OF ACCESS TO DOCUMENTS

■ Hammond alleged in Count II of its petition an abuse of discretion on the part of the Authority in denying Hammond access to certain of the documentation concerning Augusta Lumber, submitted with the City of Augusta's application. Where, as here, the Superior Court acts as an intermediate appellate court, not receiving additional evidence, the Law Court will directly examine the record as developed before the administrative agency. *Radin v. Crowley*, 516 A.2d 962, 964 (Me.1986); *Spain v. City of Brewer*, 474 A.2d 496, 498 (Me.1984). In this instance our review is limited to determining whether the Authority acted within its discretion or committed an error of law in denying Hammond access to the documents it sought. *Id.* Our independent review of the record leads us to conclude that the Superior Court correctly determined that the Authority did not abuse its discretion.

■ At the time of the hearing, June 26, 1985, confidentiality of material submitted to the Authority was governed by 10 M.R.S.A. § 975 (Supp.1984)[7] and § 1063(2). Section 975 read in pertinent part:

> Except as provided in this section and in [section] 1063, *no member, officer, agent or employee of the authority may knowingly divulge or disclose any information submitted* to, or developed by, the authority in connection with an application for ... revenue obligations, securities or financing of any project un-

---

7. Enacted by P.L.1983, ch. 519, § 6; repealed by P.L.1985, ch. 344, § 24 (effective September 19, 1985) and replaced by Section 975–A, P.L.1985, ch. 344, § 25.

der this chapter, *except to the extent that the disclosure is deemed by the authority to be necessary or convenient for evaluation of any application* submitted to the authority.

(Emphasis added.) ·

The disclosure language in section 1063(2), which has not been amended and was referred to in section 975, reads in pertinent part:

If any such party [objecting to the project] presents such objections with reasonable specificity and persuasiveness, the authority *may* divulge whatever information concerning a project *which it deems necessary for a fair presentation by the objecting party and evaluation of such objections.*

(Emphasis added.)

Hammond argues that because the Authority found it to be a party objecting to the City of Augusta's application with reasonable specificity and persuasiveness under section 1063(2), the statutes mandate that it be given access to all of the materials submitted with the application. The statutory language does not support Hammond's assertions. Section 975 *proscribes* disclosure, except in those instances the Authority deems necessary and convenient for evaluation of an application. Section 1063(2) provides that the Authority *may* disclose whatever *it* deems necessary for use by an objecting party. The Superior Court correctly concluded that disclosure is left entirely within the discretion of the Authority.

 Since section 975 is not ambiguous, the new section 975–A,[8] which mandates disclosure of materials to appropriate persons under section 1063, cannot be relied on to come to a different conclusion. Later legislative enactments can serve to aid the court in statutory interpretation only if there is ambiguity in the language being interpreted. *Singal v. City of Bangor,* 440 A.2d 1048, 1053 (Me.1982); *Delano v. City*

of *South Portland,* 405 A.2d 222, 226 (Me. 1979). In limiting disclosure of information to Hammond, the Authority acted within its discretion.

Moreover, an examination of the entire record leads us to agree with the Superior Court's conclusion that Hammond's possession of all of the documents at the administrative hearing would not have resulted in a different decision by the Authority.

The entry is:

Judgment of dismissal vacated. Case remanded to Superior Court with instructions to enter judgment affirming the action of the Finance Authority of Maine.

All concurring.

---

**8.** In contrast to the superseded section 975, 10 M.R.S.A. § 975–A(1) (Supp.1986) provides that, subject to specific exceptions not relevant here, "[d]escriptions of projects and businesses," "[a]mounts, types and general terms of financial assistance" provided to applicants, and any other information necessary to carry out section 1063 "shall be made ·available to any person upon request reasonably describing the records to which access is sought."