2006 ME 31

**FRYEBURG WATER COMPANY**

v.

**TOWN OF FRYEBURG et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 24, 2006.
Decided: March 30, 2006.

---

Randall F. Cooper, Esq. (orally), Cooper, Deans & Cargill, P.A., North Conway, NH, for plaintiff.

William C. Knowles, Esq., Scott D. Anderson, Esq. (orally), Verrill Dana, LLP, (for SF, LLC), Geoffrey H. Hole, Esq., Bernstein, Shur, Sawyer & Nelson, P.A., Portland, (for Town of Fryeburg), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] SF, LLC[1] appeals from a judgment entered in Superior Court (Oxford County, *Gorman, J.*) vacating a decision of the Fryeburg Board of Appeals. SF contends that (1) the Superior Court did not have jurisdiction to review the decision of

---

1. The Town of Fryeburg did not file a brief in the underlying M.R. Civ. P. 80B review. Appellant SF, LLC, is an abutter to the Fryeburg Water Company.

the Board; (2) the Board was correct in finding that the Fryeburg Water Company expanded a non-conforming use; and (3) the Fryeburg code enforcement officer had misinterpreted the land use ordinance when he concluded that a cease and desist order was not appropriate. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] Fryeburg Water Company is a public water utility in Fryeburg, operating in the States of Maine and New Hampshire. On August 6, 1997, FWC contracted to sell extracted ground water to Pure Mountain Springs, LLC, for sale to third parties, including Poland Spring Water Company. In September 1997, FWC applied to the Board of Appeals for a special exception permit to process containerized water. In November 1997, the Board approved the special exception permit and added several conditions to its approval.[2]

[¶ 3] On March 21, 1998, the Town of Fryeburg enacted its current Land Use Ordinance. Included in the Ordinance is section 17(g), that requires that any entity pumping more than 10,000 gallons per day of ground water or spring water be subject to a permitting process through the Fryeburg Planning Board. Section 17(g)(1) states:

Permit Required

The removal of more than 10,000 gallons per day of ground water or spring water as part of a residential, commercial, industrial, or land excavation operation, where allowed under this Ordinance, requires approval by the Planning Board. The Planning Board must grant approval if it finds that the proposal, with any reasonable conditions, will conform with the requirements of this Section, all other requirements of this Ordinance, and all applicable codes and Ordinances.

The Ordinance then lists submission requirements to obtain a permit, as well as performance standards for the extraction of ground water. Pursuant to the submission requirements, the applicant must submit a site plan that includes a statement of the quantity of ground water to be extracted, letters from state agencies, and a hydrological investigation. The performance standards include requirements that ground water extraction may not substantially lower the ground water table beyond the property lines, the proposed facility may not cause water pollution, and the use may not cause sedimentation or erosion. The performance standards also mandate monthly record keeping.

[¶ 4] At oral argument, the parties agreed that the permit required by section 17(g) is a one-time application and approval process, not a process requiring annual renewals. Thus, the FWC pumping operation is permitted as a pre-existing, non-conforming use, unless it becomes an expanded non-conforming use.

[¶ 5] Under section 4 of the Ordinance, "non-conforming conditions that legally ex-

2. The Board of Appeals at that time added four conditions:
 1. The Applicant shall operate the use approved hereby in accordance with the provisions of the Fryeburg Planning Ordinance, relating to Special Exceptions.
 2. The Applicant shall be responsible to apply for and obtain any additional permits from any other governmental agency as may be necessary for completion and operation of the proposed use.
 3. The sketch submitted by the Applicant as a part of this application, is incorporated as a part of this Decision. The Applicant shall conduct the business approved hereby in conformity with this sketch which forms a part of the basis upon which this use is approved.
 4. The Applicant shall be responsible to have a Certificate of this Decision recorded at Oxford (W.D.) Registry of Deeds.

isted before the effective date of the Ordinance ... are allowed to continue, subject to the requirements set forth in" the "non-conforming situations" provisions. Thus, non-conforming uses may continue, provided that they are not expanded. In section 23, the Ordinance defines the term "expansion of use" as: "The addition of weeks or months to a use's operating season; additional hours of operation; or an increase of floor area or ground area devoted to a particular use."

[¶ 6] In 2002 and 2003, FWC and Pure Mountain applied for and received three building permits.[3] In January 2002, FWC received a building permit to add to an existing pump house. In February 2002, FWC received a building permit to replace the roof and remodel another existing pump house. Pure Mountain applied for and received a permit to re-side and add a bathroom to a pump house in October 2003. Approvals of these permits were not challenged. The amount of ground water being pumped by FWC fluctuated, but generally increased from 240,370 gallons per day in 1997 to 583,279 gallons per day in 2003.

[¶ 7] In March 2004, SF, an abutter to FWC's property, sent a letter to the Fryeburg Code Enforcement Officer requesting that he issue a cease and desist order, requiring that Pure Mountain and FWC halt all pumping of ground water, until those entities obtained a permit pursuant to section 17(g). The CEO responded to SF's request and, based on a letter from the town attorney, declined to issue a cease and desist order. In July 2004, SF appealed to the Board of Appeals the CEO's refusal to issue the cease and desist order.

[¶ 8] The Board held a hearing at which the members present voted three to two in favor of finding that FWC had impermissibly expanded an existing use, thus requiring it to comply with the permitting requirements in section 17(g). FWC requested that the Board reconsider its decision, submitting with its request a number of exhibits not originally in the record before the Board. The Board denied FWC's request for reconsideration. FWC then filed a complaint for review of governmental action pursuant to M.R. Civ. P. 80B.

[¶ 9] The Superior Court vacated the Board's decision. The court found that SF did not have standing to appeal the CEO's decision to refuse to issue the cease and desist order. The court further found that SF's appeal was not timely, stating that all of the relevant permits relating to any expansion were issued in 1997, 2002, or 2003. Stating that "[t]here are no provisions allowing the Board to order the CEO to take enforcement actions, and there are no provisions allowing the Board to take enforcement action on its own," the court found that the Board did not have jurisdiction to review the CEO's decision. The court concluded that although the Town of Fryeburg may require FWC to comply with performance standards, it may not now require FWC to obtain a permit pursuant to the Ordinance. This appeal followed.

## II. LEGAL ANALYSIS

### A. Standing

 [¶ 10] FWC argues that SF lacked standing because it did not demonstrate that it was directly or indirectly affected by the CEO's determination. To have standing to appeal a decision to a zoning board of appeals, SF must be "af-

---

3. In October 1997, before the current Ordinance was enacted, FWC received a building permit for a utility building, along with a cement pad.

fected directly or indirectly" by the "decision, order, regulation or failure to act" by "any officer, board, agency or other body." 30–A M.R.S. § 2691(4) (2005). SF, an abutter to FWC's property, asserted at the hearing before the Board that it had a pending application for a permit to pump ground water, potentially in competition with FWC.

[¶ 11] "When the party appealing is an abutter, the party need only allege a potential for particularized injury to satisfy the standing requirement." *Sproul v. Town of Boothbay Harbor,* 2000 ME 30, ¶ 6, 746 A.2d 368, 371 (quotation marks omitted); *see also Rowe v. City of S. Portland,* 1999 ME 81, ¶ 4, 730 A.2d 673, 674; *Pearson v. Town of Kennebunk,* 590 A.2d 535, 537 (Me.1991).

[¶ 12] We have held that an abutter need show only a "relatively minor adverse consequence" to establish standing. *Rowe,* 1999 ME 81, ¶ 4, 730 A.2d at 674. Thus, renovation of a house that would bring living space closer to an abutting property owner, *Pearson,* 590 A.2d at 537, the potential for aesthetic or noise injury from construction of a double deck, *Forester v. City of Westbrook,* 604 A.2d 31, 32 (Me. 1992), and a neighbor violating a front line setback, *Rowe,* 1999 ME 81, ¶ 4, 730 A.2d at 675, have been sufficient to confer standing. In the present case, the potential for competition for water from an aquifer is sufficient to confer standing upon SF.

## B. The Claims on the Merits

[¶ 13] SF contends that the Board properly found that FWC required a permit pursuant to section 17(g) of the Ordinance because FWC had impermissibly expanded a pre-existing non-conforming use. SF also contends that by challenging the CEO's refusal to issue a cease and desist order, it had filed a timely challenge to FWC's increased withdrawal of ground water under the permits FWC had received.

### 1. Expansion of Use

[¶ 14] Under the Ordinance, nonconforming uses are allowed, provided they are not expanded. The Board concluded that there was expanded use. After finding that "[t]he continued extraction and sale of Ground Water and/or Spring Water from the subject premises, after the enactment of the current Land Use Ordinance, is allowed as a pre-existing nonconforming use, subject to the requirements of Ordinance Section 4," the Board stated,

> The existence of additional facilities at the subject premises erected or installed after the effective date of the enactment of the Fryeburg Land Use Ordinance (March 21, 1998) constitutes an increase in the floor area or ground area devoted to the particular use, and therefore, an expansion of the use.

The Board did not indicate which facilities it was referring to that constituted the expansion of use. The definition of "expansion of use" in the Ordinance only includes "[t]he addition . . . to a use's operating season; additional hours of operation; or an increase of floor area or ground area devoted to a particular use." In the present case there is no record evidence that the 2002 or 2003 permits resulted in the types of expansions addressed in the definition. The definition of "expansion of use" does not include an increase in the amount of water pumped or any indication that a change in the intensity of a use, without a change in the seasons, hours or area devoted to a use, would constitute an expansion of a use.

[¶ 15] The only other possible record references to expanded use would include the building permits, which would impli-

cate the timeliness issue.[4] The special exception permit related to ground water pumping was issued before the current Ordinance took effect. The other relevant permits were approved in 2002 and 2003, and no appeal was taken. Thus, the Board erred in finding an expansion of a pre-existing, non-conforming use because any expansion of use that may have occurred was not within the narrow definition of expansion of use in the Ordinance.

## 2. Timeliness

[¶ 16] In *Wright v. Town of Kennebunkport*, the property owner appealed a decision of the Kennebunkport Zoning Board of Appeals that had revoked the owner's building permit, despite the abutters' late filing of an appeal. 1998 ME 184, ¶¶ 2–3, 715 A.2d 162, 163–64. The abutters learned from the CEO that the property owner would be building, the CEO issued a building permit, and the CEO notified the abutters of his decision. *Id.* ¶ 2, 715 A.2d at 164. Fourteen days past the thirty-day appeal deadline under the local ordinance, the abutters requested that the CEO revoke the building permit because it violated local ordinances. *Id.* The CEO wrote back and refused to revoke the permit because the abutters did not comply with the thirty-day deadline to appeal the issuance of building permits. *Id.* The Board of Appeals then heard the appeal, stating that they were relying on the CEO's letter as the relevant date for bringing the appeal and revoked the building permit. *Id.* ¶ 3, 715 A.2d at 164. The Superior Court affirmed. *Id.*

[¶ 17] In vacating the Superior Court's judgment, we stated that

If we were to adopt the Board's construction ... then the 30–day time limit would become a nullity. An individual aggrieved by a CEO's decision to issue a permit could bypass the 30–day appeal deadline simply by requesting that the CEO revoke the permit.... Strict compliance with the appeal procedure of an ordinance is necessary to ensure that once an individual obtains a building permit, he can rely on that permit with confidence that it will not be revoked after he has commenced construction.

*Id.* ¶ 6, 715 A.2d at 164–65.

[¶ 18] The facts in the present case are analogous to *Wright*. Here, SF filed its appeal with the Board long after the thirty-day period for appealing the relevant building permits had expired.[5] This appeal to the Board was based on the letter by which the CEO chose not to issue a cease and desist order. The requested cease and desist order was based on the alleged expansions of use related to the special exception permit from November 1997 or the building permits from 1997, 2002, or 2003. None of these permits were appealed in a timely manner.

[¶ 19] SF's arguments distinguishing *Wright* are not persuasive. SF is not seeking to revoke a permit, but seeking to establish that a new permit should be obtained. This is analogous to the parties in *Wright* attempting to revive an appeal by their request to revoke a permit. With SF's view of the law, an abutter could request a cease and desist order any time he or she missed a deadline to appeal a valid permit and then successfully appeal the permit—an outcome we sought to

---

4. The amount of water pumped has increased over time, but there is no evidence that this increase was caused by or related to the building permits relevant here.

5. Section 18(G)(1) of the Ordinance provides that application for an appeal to the Board must be received within thirty days after the decision by the CEO.

avoid in *Wright,* 1998 ME 184, ¶ 6, 715 A.2d at 164–65.[6]

## III. CONCLUSION

[¶ 20] SF's attempt to challenge the permits that may have led to the increased pumping of ground water is not timely, and the Board of Appeals erred in concluding that FWC had engaged in a prohibited "expansion of use" under the local ordinance.

The entry is:

Judgment affirmed.

---

6. The Ordinance cannot not be read to mean, as SF contends, that a decision to not enforce the ordinance creates a right to appeal. The CEO is granted what is akin to prosecutorial discretion under the Ordinance. *See Herrle v.* *Town of Waterboro,* 2001 ME 1, ¶ 10, 763 A.2d 1159, 1161–62.