STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-06-07
REC - CUM- 11/2/2006

GEORGE MCNEIL and
ELEANOR DUDEK

Plaintiffs
v.

ORDER ON 80B APPEAL

TOWN OF STANDISH

Defendant

DONALD L. GARBRECHT
LAW LIBRARY

and

JAN 17 2007

ROBERT HIGGINS

Defendant Party in Interest

Before the Court is Plaintiffs George McNeil and Eleanor Dudek's ("Plaintiffs") appeal, pursuant to M.R. Civ. P. 80B, of the Town of Standish ("Town") Historic Preservation Commission's ("Commission") grant of a certificate of appropriateness ("Certificate") to Defendant Robert Higgins ("Defendant").

## BACKGROUND

Defendant owns property at 5 Bonny Eagle Road in Standish ("Property") improved with a house and barn. Under the Standish Historic Preservation Ordinance ("Ordinance"), the Property is in a "Historic District." Standish, Me., Code § 181-132(B) (Nov. 5, 2002). Before making alterations to the house or barn, the Commission must grant a Certificate. Standish, Me., Code § 181-131(A) (Nov. 5, 2002). Plaintiffs are residents of the Town. Ms. Dudek owns property across the street from the Property while Dr. McNeil lives nearly five miles away.

1

At a regularly scheduled Commission meeting on December 8, 2005 ("December Meeting"), Joseph Delois, a prospective buyer of the Property, presented an informal overview of proposed actions he would take if he bought the Property ("Proposal"). No written materials on the Proposal were submitted to the Commission prior to the December Meeting. The Proposal included placing a "historically compatible" commercial building on the Property and moving the house and barn approximately 200 yards from their current location to accommodate the new building. Mr. Delois acknowledged that the barn might not be in sufficiently stable condition to move, in which case he would demolish it. Dr. McNeil was present at this meeting and spoke against the Proposal. Ms. Dudek was not present, but her husband attended and did not speak. Based upon the information presented, the Commission stated that it did not believe that the Ordinance permitted the Proposal. No vote, however, was requested or taken at that time. The minutes for that meeting note regarding the Proposal that "[i]t was decided that the Commission would hold a formal meeting on January 12, 2006 to address this entire topic." (R. at Tab 6.)

On December 12, 2005, Defendant wrote a five-page letter to the Commission. In the first paragraph of that letter, Defendant stated that "Mr. Delois[] was discouraged so much [by the Commission's reaction to the Proposal at the December Meeting] that he has withdrawn his offer." The letter went on at length to present reasons why the Commission should approve the Proposal. Near the close of the letter, Defendant stated "[f]or all these reasons . . . I would very much appreciate your reconsideration of Mr. Delois' proposal." There is no dispute that this letter was not explicitly labeled as an "application" for a Certificate. Plaintiffs effectively admit in their brief that they were aware of the

2

letter prior to the Commission's January 12, 2006 meeting ("January Meeting"). (*See* Aps.' Br. 3) (noting "Plaintiffs had no reason to attend the [January Meeting] in light of the Higgins letter . . . . ")

At the January Meeting, the Commission considered the Proposal and voted their approval with conditions permitting Mr. Higgins "or his designee to move the existing main house, to restore the exterior compatible with current appearance, to demolish the barn if it cannot be moved, and all new construction be historically compatible with the other buildings in the Historic Preservation District." (R. at Tab 2.) Plaintiffs were not present at this meeting and, other than Dr. McNeil's comments at the December Meeting, did not participate in the Commission's consideration of the Proposal.

Plaintiffs timely filed this appeal challenging the Commission's issuance of a Certificate. Subsequently, an amended complaint added Defendant as a party. The Town filed a motion for a trial on the facts in order to add evidence not contained in the Rule 80B record. This motion was granted and the parties filed a set of stipulations that obviated the need for an evidentiary hearing.

## STANDARD OF REVIEW

The Court reviews a local administrative agency's decisions for abuse of discretion, error of law, or findings not supported by substantial evidence in the record. *Adelman v. Town of Baldwin,* 2000 ME 91, ¶ 8, 750 A.2d 577, 582. Substantial evidence is evidence that is sufficient for a board to have reasonably found the facts as it did. *Ryan v. Town of Camden,* 582 A.2d 973, 975 (Me. 1990). The burden of persuasion is on the party challenging a board's decision to show that the evidence compels a different result. *Twigg v. Town of Kennebunk,* 662 A.2d 914, 916 (1996). The Court must not substitute its judgment for that of a board. *Id.*

3

Further, a board's "decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it." *Id.*

## DISCUSSION

### I. Standing

A threshold question is whether either Plaintiff has standing to bring this appeal. Defendant and Town both argue that the test for determining standing is "appellant must have been a party to the administrative proceeding and must suffer a particularized injury from the [Commission's] decision." *Lewis v. Town of Rockport*, 2005 ME 44, ¶ 8, 870 A.2d 107, 110. Plaintiffs, however, argue that this test for standing was developed in the context of applying a statutory provision governing appeals to the Superior Court from a municipal board of appeals. Specifically, 30-A M.R.S.A. § 2691(3)(G) states that "*[a]ny party* may take an appeal . . . to Superior Court from any order . . . in accordance with the Maine Rules of Civil Procedure, Rule 80B." (emphasis added). Because the decision appealed here is of a historic preservation commission's decision, not of a decision by a board of appeals, Plaintiffs argue that the requirement that an appellant was a "party" to the proceeding appealed is inapplicable. Plaintiffs also note that the Ordinance provides for appeal by "any person" aggrieved by a decision of the Commission, not "any party."

While Plaintiff is correct in its description of the root of the standing jurisprudence cited by the Town and Defendant, it does not change the analysis. The Law Court has had occasion to interpret the effect on standing of virtually identical language in the Maine Administrative Procedure Act, which stated "any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court." *Anderson v. Comm'r of the Dep't of Human*

*Services*, 489 A.2d 1094, 1097 (Me. 1985). Despite the use of "any person," the Court noted that "[t]he plaintiff was a party before the hearing officer, [] a necessary element of standing." *Id.* at 1097 n.6. Therefore, even though the Ordinance says "any person" instead of "any party," the test for standing requires Plaintiffs to show that they were parties before the Commission and that they suffered a particularized injury from the Commission's decision.

### A. Plaintiff McNeil's Standing

Dr. McNeil attended the December Meeting and argued in opposition to the Proposal. As a result, he meets the requirement that he is a party. In order to show he suffered a particularized injury, however, Dr. McNeil must demonstrate that he has experienced a harm that is "in fact distinct from the harm experienced by the public at large." *Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (1984).

Plaintiffs make no argument that Dr. McNeil has suffered a particularized injury and therefore this issue merits little discussion. It is enough to note that Dr. McNeil lives almost five miles away from the Property and therefore is not directly impacted by any development that occurs there in a manner distinct from the public at large. As a result, Dr. McNeil does not have standing to pursue this Rule 80B appeal.

### B. Plaintiff Dudek's Standing

Ms. Dudek lives across the street from the Property and is therefore an abutter. Abutters need only clear a low bar to meet the standing requirement of a particularized injury. *See Fryeburg Water Co. v. Town of Fryeburg*, 2006 ME 31, ¶ 12, 893 A.2d 618, 622 (quoting *Rowe v. City of S. Portland*, 1999 ME 81, ¶ 4, 730 A.2d 673, 674) (noting "an abutter need show only a 'relatively minor adverse

5

consequence' to establish standing"); *Lewis v. Town of Rockport*, 2005 ME 44, ¶ 8, 870 A.2d 107, 110 (stating "[a]n abutting landowner has a particularized injury if there is a conceivable injury"). Examples of alleged harms sufficient to satisfy an abutter's particularized injury requirement are "renovation of a house that would bring living space closer to an abutting property owner, the potential for aesthetic or noise injury from construction of a double deck, and a neighbor violating a front line setback." *Fryeburg Water Company*, 2006 ME 31, ¶ 12, 893 A.2d at 622 (internal citations omitted).

Because the standard for showing a particularized injury is so easily met for an abutting landowner like Ms. Dudek, she clears this hurdle. There are a number of "conceivable" injuries she could suffer, including the potential for aesthetic or noise injury from construction and renovation activities on the Property.

The more complicated standing issue is whether Ms. Dudek was a party. In order to satisfy this requirement, Ms. Dudek must show that she participated before the Commission. *See Dep't of Envt. Protection v. Town of Otis*, 1998 ME 214, ¶ 7, 716 A.2d 1023, 1024. There is no argument that Ms. Dudek attended either Commission meeting or that she participated in any way in the Commission's proceedings. Ms. Dudek, however, argues that her absence from these meetings was due to the Commission's violations of procedural requirements of the Ordinance.

The Ordinance requires "[p]rior to the public hearing upon approval or denial of a certificate of appropriateness, the Commission shall make best efforts to see that the owners of any property likely to be materially affected by the application are notified, to give notice to the public." Standish, Me., Code § 181-

6

131(H) (Nov. 5, 2002). As a result, if Ms. Dudek's property was "likely to be materially affected by the application" and if the Commission did not make "best efforts" to notify her of the January Meeting, then it violated an Ordinance requirement specifically designed to ensure that interested parties are aware of applications for Certificates. In that event, the Town and Defendant cannot be heard now to argue that, because of this violation, Ms. Dudek lacks standing to bring an appeal. *See Hopkins v. Dep't of Human Services*, 2002 ME 129, ¶ 12, 802 A.2d 999, 1002 (stating that a court may vacate an agency's decision if it results in procedural unfairness, including the failure to follow the requisite processes).

There is nothing in the Ordinance to provide guidance on what is meant by property being "materially affected by the application." Based on the plain language of the Ordinance, however, this appears to evidence a concern similar to the "particularized injury" element for standing in 80B appeals. Because Ms. Dudek is an abutter of the Property, and because any construction or development of the Property would likely have an impact on her property, Ms. Dudek satisfies this requirement. The Commission was required to make best efforts to notify Ms. Dudek of the January Meeting.

Defendant and the Town do not argue that the Commission made an appropriate effort to notify Ms. Dudek. Instead, they assert that Ms. Dudek had actual notice of the meeting. Because of this, they argue that Ms. Dudek was not prejudiced in any way and cannot claim procedural unfairness. *See id.* ¶ 13, 802 A.2d at 1003. This actual notice comes from the Commission's statement at the conclusion of its December Meeting "that the Commission would hold a formal meeting on January 12, 2006 to address [the Proposal]." Because Ms. Dudek's

husband was present throughout that meeting, personal notice was purportedly given to Ms. Dudek.

Defendant cites no support for the proposition that actual notice to one spouse can be imputed to the other. Further, on the record before the Court there is no evidence that Mr. Dudek ever mentioned the December Meeting to his wife. It is, however, arguable that actual notice to Mr. Dudek is sufficient to qualify as actual notice to Ms. Dudek on the basis of their being joint tenants in their property. *See Cummings v. Town of Oakland*, 430 A.2d 825, 831 (Me. 1981) (noting that "[t]he fundamental principle underlying the holdings [in cases on what constitutes sufficient notice is that] it cannot be given by methods or under circumstances which the giver of notice could reasonably anticipate will be ineffective in communicating knowledge to the person or entity entitled to receive the notice"). This is a moot point as the Commission's statement that it would "hold a formal meeting on January 12, 2006" to address the Proposal cannot satisfy its duty to make best efforts to inform abutting property owners present at that meeting, much less those who were not present, that an application for a Certificate could be approved at the January Meeting. The Ordinance provides explicitly for a procedure that must be followed to grant a Certificate. Specifically, such applications "shall be considered by the Commission at its next regular meeting, provided they have been filed at least 21 calendar days before the regularly scheduled meeting of the Commission." Standish, Me., Code § 181-131(E) (Nov. 5, 2002). By the admission of all involved in the December Meeting, Mr. Delois's presentation of the Proposal was "informal." At that time, there was no application for a Certificate filed, nor is there any indication that such an application was imminent. As such, there was

8

no reason to believe at the conclusion of the December Meeting that an application for a Certificate might be approved at the January Meeting.

A second piece of evidence that allegedly provided Ms. Dudek with actual notice is Mr. Higgins's December 12, 2005 letter. Plaintiffs apparently admit knowledge of this letter, although there is no indication of how this is possible given that they were not the intended recipients. That said, this letter does not qualify as an application for a Certificate under the Ordinance, does not purport to be an application, does not state that such an application either has or will be made and therefore could not provide actual notice to Ms. Dudek.

In addition to the fact that it does not purport to be an application for a Certificate, Mr. Higgins's letter to the Commission cannot be considered a de facto application for a number of reasons. First, the Ordinance requires that an "[a]pplication for a certificate of appropriateness must be signed by . . . the Chairman or Vice Chairman of the Commission stating its approval, denial, or approval with conditions and the reasons for the decision." Standish, Me., Code § 181-131(C) (Nov. 5, 2002).The record does not demonstrate that Mr. Higgins's letter was ever signed by the Chairman or Vice Chairman. On the contrary, there is a form in the record titled "Town of Standish Historic Preservation Commission Certificate of Appropriateness" containing space for an applicant's personal information, the planned alteration, a space to circle whether the Commission has approved, denied or approved with conditions the proposal, a space for a short description of that decision and spaces for the Commission Chair, Commission Vice Chair and Applicant to sign their names. (R. at Tab 2.) On this form, the planned alteration was described, "approved with conditions" was circled followed by the conditions set by the Commission, and all

9

appropriate signatures are present, with the earliest signature being that of Mr. Higgins on January 12, 2006. The Commission Chair's signature is dated January 20, 2006 and the Vice Chair's signature is dated January 17, 2006. At the bottom of this form is the statement "[t]his application does not negate the need for the above applicant to obtain any additional municipal approvals . . . ." The existence of this form, complying with the Ordinance's substantive requirements for an application for a Certificate, suggests strongly that it, and not Mr. Higgins's letter, is the application.

In addition, the Ordinance permits the Town to "establish reasonable fees from time to time for applications [for Certificates]." Standish, Me., Code § 181-131(C) (Nov. 5, 2002). The Town has in fact established a fee of $200 to apply for a Certificate. Defendant paid this fee with a check dated January 12, 2006 and which included the descriptive note "HDC applic fee." (R. at Tab 3.) Because there is no evidence in the record, and no argument made by Defendant or the Town, that Defendant paid an application fee prior to the December 12 letter, that letter cannot be considered an application. In fact, the application fee check being dated as of the date of the January Meeting is strong evidence that any application for a Certificate filed by Defendant occurred on that day. In the absence of compliance with the Ordinance's requirements, Mr. Higgins's letter is not the equivalent of an application for a Certificate and could not, even if she had been aware of it, have put Ms. Dudek on notice that such an application would be considered at the January Meeting.

The Commission's failure to make best efforts to notify Ms. Dudek before considering the application for a Certificate constituted a violation of the Ordinance. In the absence of evidence that Ms. Dudek had actual notice of the

January Meeting and its agenda, this deprived Ms. Dudek of her right to appear and speak in opposition to the Proposal. As a result, her failure to appear cannot support a denial of standing to appeal the Commission's decision.

### C. Violation of the Ordinance

For the same reasons that Ms. Dudek has standing to challenge the Commission's decision despite not having appeared before it in opposition to the Proposal, Plaintiffs have shown that the Commission violated the procedures established by the Ordinance for granting Certificates. First, as discussed at length above, the Commission was required to make best efforts to notify property owners likely to be materially affected that an application for a Certificate might be approved at the January Meeting. Its failure to do so denied Ms. Dudek an opportunity to object to the Proposal before the Commission.

Further, for the reasons discussed above, on the record before the Court there was no valid application for a Certificate before the Commission when it approved the Proposal at the January Meeting. Because the evidence shows that the first time Mr. Higgins filled out an application and paid the requisite application fee was on January 12, 2006, the day of the January Meeting, and because the Ordinance requires at least 21 days to pass between the filing of an application and the regularly scheduled meeting at which that application is considered, the Commission was without authority to approve the application at its January Meeting.[1]

---

[1] It is unnecessary for the Court to reach this issue, but Plaintiffs, while not disputing that the January Meeting met the standards for a "public proceeding," argue that the Ordinance requires a "public hearing." This distinction purportedly required the Commission to provide a higher level of public notice, including efforts to elicit input from the public and advertising the hearing, than it employed. The only authority Plaintiffs cite for this proposition is the

Because the Commission did not comply with the Ordinance, the Court must vacate the Commission's approval of the Proposal. If the Commission takes up consideration of the Proposal in the future, it must provide notice to Ms. Dudek and provide her an opportunity to be heard in opposition.

The entry is:

> The Commission's decision approving the Proposal is VACATED. This case is remanded to the Commission for further proceedings consistent with this order.

Dated at Portland, Maine this ____ day of _____, 2006.

Robert E. Crowley
Justice, Superior Court

---

definition of "hearing" from Black's Law Dictionary which they characterize as requiring "a proceeding of 'relative formality' with definite issues of fact or of law to be decided, in which witnesses are heard and evidence presented." (Pls.' Br. 7 n.9.) Black's Law Dictionary also, however, specifically defines "public hearing" as "[a] hearing that, within reasonable limits, is open to anyone who wishes to observe." *Black's Law Dictionary* 318 (2d Pocket Ed. 2001). Taking these definitions together, the January Meeting qualified as a "public hearing."

Date Filed __02/06/06__          __CUMBERLAND__          Docket No. __AP-06-7__
                                      County

Action __80B APPEAL__

GEORGE MCNEIL                          TOWN OF STANDISH
ELEANOR DUDEK                          ROBERT HIGGINS, PII

                                                    vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| DAVID LOURIE, ESQ.<br>189 SPURWINK AVENUE<br>CAPE ELIZABETH, ME 04107<br>799-4922 | SALLY DAGGETT ESQ<br>KENNETH COLE ESQ<br>PO BOX 4510<br>PORTLAND ME 04112<br><br>JOHN C. BANNON, ESQ.<br>P.O. BOX 9785<br>PORTLAND, MAINE 04104-5085<br>207-773-5651 |

Date of
Entry