MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2024 ME 76
Docket:       Yor-24-72
Argued:       September 10, 2024
Decided:      November 14, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

# HIGH MAINE, LLC

v.

# TOWN OF KITTERY

CONNORS, J.

[¶1]  High Maine, LLC, appeals from a judgment of the Superior Court (York County, *Mulhern, J.*) dismissing its complaint for lack of standing.  Its complaint challenged the Town of Kittery's issuance of a marijuana retail store license and approval of a change of use and modified site plan for GTF Kittery 8, LLC, to operate a marijuana retail store in the Town's C-2 zone.  *See* M.R. Civ. P. 80B.  Because we agree with High Maine that the complaint's allegations were sufficient at the motion to dismiss stage to demonstrate its standing, we vacate the judgment of the Superior Court and remand for further proceedings.

## I. BACKGROUND

## A.    Administrative and Judicial Standing

[¶2]  When a complaint challenges a municipal decision, there are two potentially relevant standing issues: the standing required to challenge governmental action at the municipal level and the standing required to challenge municipal action in court.  *See Upstream Watch v. City of Belfast*, 2023 ME 43, ¶ 24, 299 A.3d 25.  Although the Town stated in its motion that it was challenging High Maine's "administrative standing," the substance of the Town's challenge has been to judicial standing, not to the standing needed to participate in an administrative proceeding.  The Superior Court so treated the motion, and we do the same.

[¶3]  In the proceedings before the Superior Court, a party to a Rule 80B complaint for judicial review of governmental action may challenge the plaintiff's standing to sue in court through two different mechanisms: as a motion to dismiss after the filing of the complaint, *see* M.R. Civ. P. 12(b)(6), or as a component of the appellee's brief, *see* M.R. Civ. P. 80B(g).

[¶4]  When, as here, a defendant in a Rule 80B action files a motion to dismiss for lack of standing prior to the submission of the administrative record, we look to the allegations of the complaint to identify the relevant

factual predicate for our review.[1] *See Hammond Lumber Co. v. Fin. Auth. of Me.*, 521 A.2d 283, 286-87 (Me. 1987) (reviewing the allegations of a Rule 80C petition to determine standing); *see generally Harmon v. Harmon*, 404 A.2d 1020, 1021 (Me. 1979) ("All well-pleaded material allegations of the complaint are taken as admitted for purposes of a motion to dismiss for . . . want of standing."). That factual predicate in this instance is as follows.

## B. Facts and Procedural History

[¶5] In 2021, GTF Kittery 8 pre-applied for a marijuana retail store license in the C-2 zone in the Town, following a process set forth in the Town Code. *See* Kittery, Me., Code §§ 5.11.3, 5.11.9 (Aug. 9, 2021). Under the Code, only one marijuana retail store is permitted in each zone in which marijuana retail stores are allowed. *Id.* § 5.11.9(A). No business may have more than one marijuana retail store in the Town; Tax Identification Numbers (TINs) are used to confirm compliance. *Id.* § 5.11.9(B).

---

[1] The complaint here summarizes the pertinent provisions of the Town Code, but presumably because the administrative record was not yet due when the Town filed its motion to dismiss, *see* M.R. Civ. P. 80B(e)(1), (g), the Code itself was not yet part of the record before the trial court. Because High Maine provided the licensing provisions of the Town Code in the appendix on appeal and the Town raised no opposition, we include citations to those provisions in our recitation of the facts and consider their impact as well. We note, however, that moving to dismiss before an administrative record is produced could, in other cases, affect the justiciability of an appeal, because we cannot take judicial notice of municipal ordinances. *See Odiorne Lane Solar, LLC v. Town of Eliot*, 2023 ME 67, ¶ 16 n.9, 304 A.3d 253; *Mills v. Town of Eliot*, 2008 ME 134, ¶ 23, 955 A.2d 258.

[¶6]  To obtain a license, an entity must first submit a pre-application form and supporting documentation, pay a fee, be certified as eligible by the Town, and be selected through a lottery.  *Id.* § 5.11.9(C)-(D).  If a pre-application is not immediately selected in the lottery, it is placed on a waiting list in the order in which it was drawn, with any pre-applications submitted and certified after the lottery added to the end of the list.  *Id.* § 5.11.9(E).  "Applications will not be processed from the wait list if there have been any material changes to ownership, as indicated on the ownership affidavit, or where there is a change to location of the premises."  *Id.*  When a license becomes available in a zone, the Town invites the next pre-applicant on the waiting list for that zone to apply for the license.  *Id.*

[¶7]  Here, GTF Kittery 8 filed two pre-applications to operate a marijuana retail store at 89 Route 236—one pre-application (MPA-446) proposing to operate on the first floor and one pre-application (MPA-505) proposing to operate on the second floor.  Twenty-five other "GTF" entities also pre-applied for permits for the same building, each also submitting one pre-application for the first floor and one pre-application for the second floor.  The building at 89 Route 236 is within 1,000 feet of the Great Beginnings Nursery School.

[¶8]  The Town held an initial lottery of the pre-applications in October 2021, and GTF Kittery 8 was put on the waiting list.  On February 27, 2023, the Town invited GTF Kittery 8 to submit an application.  GTF Kittery 8 submitted a license application, application for a change of use, and modified site plan.  It proposed operating a marijuana retail store on both the first and second floors of 89 Route 236, rather than operating only on the second floor as proposed in the pre-application.

[¶9]  High Maine, a limited liability company which has a principal place of business in Kittery, had also pre-applied for a license to operate a marijuana retail store in the Town's C-2 zone, with its proposed store to be located at 1 Route 236.  On June 6, 2023, High Maine objected to GTF Kittery 8's change in the location of the premises to encompass two floors and argued to the Planning Board that the Board should not approve GTF Kittery 8's change of use and modified site plan because the proposed use would violate 28-B M.R.S. § 402(2)(A) (2024) by authorizing a cannabis establishment within 1,000 feet of a school.  Over High Maine's objections, on September 14, 2023, the Town's Planning Board approved GTF Kittery 8's application for the change of use and approved the modified site plan.  On October 9, 2023, High Maine objected to

the issuance of a license to GTF Kittery 8.  The Town Council voted to approve the license application on October 11, 2023.

[¶10]  On October 27, 2023, High Maine filed a complaint in the Superior Court seeking judicial review of the Town's land use approvals and licensing of GTF Kittery 8.  *See* M.R. Civ. P. 80B.  The Town moved to dismiss the complaint on the ground that High Maine failed to allege a particularized injury and therefore lacks standing.  High Maine opposed the motion and argued that as a pre-applicant with a prospective business interest at stake, it has standing to challenge the validity of the Town's actions.  The Town replied that although High Maine may be affected by the Town's decisions, a diminished opportunity to apply for a license is too abstract to constitute an injury sufficient to support standing.

[¶11]  On January 26, 2024, the court dismissed the complaint for lack of standing, reasoning that High Maine is not directly affected by the Town's decisions because its status as a prospective license-holder on the waiting list was unchanged before and after the Town's decisions.  High Maine timely appealed to us.  *See* 14 M.R.S. § 1851 (2024); M.R. Civ. P. 80B(n); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

[¶12] We review de novo a court's dismissal of a Rule 80B complaint for lack of standing. *Friends of Lincoln Lakes v. Town of Lincoln*, 2010 ME 78, ¶ 8, 2 A.3d 284. When reviewing a motion to dismiss a Rule 80B complaint, we examine the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Paul v. Town of Liberty*, 2016 ME 173, ¶ 19, 151 A.3d 924 (quotation marks omitted).

[¶13] To establish judicial standing to file an appeal pursuant to Rule 80B, the plaintiff must have both (1) participated in the relevant administrative proceedings and (2) "suffered a particularized injury" as a result of the challenged municipal decision. *Norris Fam. Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 11, 879 A.2d 1007. The Town does not challenge High Maine's standing based on the first requirement, so we focus on whether the allegations of High Maine's complaint indicate that it suffered a particularized injury. "A particularized injury occurs when a judgment or order adversely and directly affects a party's property, pecuniary, or personal rights. A person suffers a particularized injury only when that person suffers injury or harm that is in fact distinct from the harm experienced by the public at large." *Nergaard v. Town of*

8

*Westport Island*, 2009 ME 56, ¶ 18, 973 A.2d 735 (citations and quotation marks omitted).

[¶14]  If a party's legal rights and responsibilities are unchanged by a decision, the party will not have standing to challenge the decision.  *See Great Hill Fill & Gravel, Inc. v. Bd. of Env't Prot.*, 641 A.2d 184, 184-85 (Me. 1994). "Being affected by a governmental action is insufficient to confer standing in the absence of any showing that the effect is an injury," *Lindemann v. Comm'n on Govt'l Ethics & Elec. Pracs.*, 2008 ME 187, ¶ 15, 961 A.2d 538 (quotation marks omitted), and an injury is not particularized if it is suffered equally by all citizens, *see Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me. 1984) (concluding that the plaintiffs lacked standing when their complaint alleged only that they were Maine citizens and that because of the Superintendent's allegedly deficient publication of notice, "they failed to receive adequate notice of Key Bank's application and of their right to participate in the application process").  "Just what particular interest or injury is required for standing purposes . . . varies based on the type of claims being alleged." *Black v. Bureau of Parks & Lands*, 2022 ME 58, ¶ 27, 288 A.3d 346 (quotation marks omitted).

[¶15]  For example, courts generally consider abutters and owners of property in the same neighborhood as the property on which a use is proposed to have standing to bring land use appeals, whereas those whose property is not near the proposed use lack standing unless they show that some other interest of theirs will be affected.[2]  *Nergaard*, 2009 ME 56, ¶¶ 18-22, 973 A.2d 735.  As another example, those who made substantial use of Baxter State Park had standing to challenge a decision authorizing the use of heavy equipment to harvest blow-down timber in the Park.  *Fitzgerald v. Baxter State Park Auth.*, 385 A.2d 189, 191, 197 (Me. 1978).

[¶16]  A business competitor may have standing if it was a party to the proceedings and the proposed governmental action would result in substantial detriment to the competitor and adversely affect its business.  *Hammond Lumber Co.*, 521 A.2d at 286-87.  For instance, "an existing nursing home in the . . . area . . . suffered a direct and particularized injury when the Department issued a [certificate of need] for the construction of 70 additional beds in the

---

2  In some cases, the "potential for particularized injury" is sufficient for an abutter to have standing, *Fryeburg Water Co. v. Town of Fryeburg*, 2006 ME 31, ¶¶ 11-12, 893 A.2d 618 (quotation marks omitted), as when an abutter proposes a landfill, *In re Lappie*, 377 A.2d 441, 441, 443 (Me. 1977); a sludge-disposal operation, *Pride's Corner Concerned Citizens Ass'n v. Westbrook Bd. of Zoning Appeals*, 398 A.2d 415, 418 (Me. 1979); a competing convenience store, *Christy's Realty Ltd. P'ship v. Town of Kittery*, 663 A.2d 59, 61-62 (Me. 1995); or the installation of self-service gas pumps at a store, *Singal v. City of Bangor*, 440 A.2d 1048, 1051 (Me. 1982), *overruled in part on other grounds by Norris Fam. Assocs., LLC*, 2005 ME 102, ¶¶ 12-13, 879 A.2d 1007.

same city to a competitor." *Bradbury Mem'l Nursing Home v. Tall Pines Manor Assocs.*, 485 A.2d 634, 638 (Me. 1984). We similarly concluded that a corporation had standing to challenge the validity of a Portland ordinance when the corporation was "in the business of running pre-release facilities" and was "intent on expanding its operation," but "the Portland Ordinance as amended preclude[d] any such expansion." *Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1381 (Me. 1996).

[¶17] Construing the complaint in the light most favorable to High Maine, it has alleged a particularized injury as a pre-applicant on the waiting list to apply for a marijuana retail store license.[3] Unlike the public at large, High Maine's prospect for obtaining the single license available in the C-2 zone is directly and negatively affected by the alleged defects in the process and resulting licensing decision. *See Ricci*, 485 A.2d at 647; *Nergaard*, 2009 ME 56, ¶ 18, 973 A.2d 735. The complaint alleges not only that GTF Kittery 8 received a license to operate a marijuana retail store in a building in which it is illegal to operate under state law, *see* 28-B M.R.S. § 402(2)(A), but that fifty-one other pre-applications were filed as to that building. Success on its complaint could

---

[3] Although High Maine did not allege that it is qualified to hold a license, the allegations in the complaint are sufficient for us to infer that fact for purposes of the motion to dismiss. *See Nadeau v. Frydrych*, 2014 ME 154, ¶ 8, 108 A.3d 1254 (holding that a complaint satisfied the notice pleading standard based on a "reasonable inference" that could be drawn from the complaint's allegations).

therefore potentially bring High Maine's pre-application to a significantly better position in relation to the other pre-applications on the waiting list. *See Hammond Lumber Co.*, 521 A.2d at 286-87; *Bradbury Mem'l Nursing Home*, 485 A.2d at 638. Furthermore, accepting High Maine's allegations as true, GTF Kittery 8 obtained an unfair advantage in the lottery by submitting two applications (one for the first floor and one for the second floor) for a location that, as merged in the site plan review process, became approved as a single, two-floor location.

[¶18] High Maine's complaint in essence alleges that because of a flawed process, it was deprived of the opportunity to compete on an equal footing with GTF Kittery 8 for the one license available in the C-2 zone. A similar theory of standing exists when a plaintiff that has bid on a government contract alleges that the selection process was illegally flawed. *See Planned Parenthood of Greater Washington & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020) ("[T]he inability to compete on an equal footing in [a] bidding process is sufficient to establish injury-in-fact." (quotation marks omitted)); *Free Air Corp. v. F.C.C.*, 130 F.3d 447, 450 (D.C. Cir. 1997) ("[S]ufficiently viable runners-up in a procurement process have standing to

allege that an illegality in the process caused the contract to go to someone else and not to them.").

[¶19]  Pre-applicant High Maine has alleged defects in the process that resulted in a particularized injury to it that is separate and distinct from any harm to the public at large.  *See Nergaard*, 2009 ME 56, ¶ 18, 973 A.2d 735. Because the complaint's allegations are thus adequate to support High Maine's standing, we vacate the judgment dismissing the complaint and remand for further proceedings.

The entry is:

> Judgment of dismissal vacated.  Remanded for
> further proceedings.

Hannah E. King, Esq., and Zachary B. Brandwein, Esq. (orally), Dentons Bingham Greenebaum LLP, Portland, for appellant High Maine, LLC

Stephen E.F. Langsdorf, Esq., and Cameron Ferrante, Esq. (orally), Preti, Flaherty, Beliveau & Pachios, LLP, Augusta, for appellee Town of Kittery

York County Superior Court docket number AP-2023-30
FOR CLERK REFERENCE ONLY