363 A.2d 235 (1976)
In the Matter of INTERNATIONAL PAPER COMPANY, ANDROSCOGGIN MILL EXPANSION.
Supreme Judicial Court of Maine.
August 27, 1976.
*236 Jensen Baird Gardner Donovan & Henry by W. John Amerling, Jr., Portland, for appellant.
Pierce, Atwood, Scribner, Allen & McKusick by Daniel E. Boxer, Donald W. Perkins, Portland, for International Paper Co.
*237 H. Cabanne Howard, Asst. Atty. Gen., Augusta, for Board of Environmental Protection.
Before DUFRESNE, C. J., and WEATHERBEE,[*] POMEROY, WERNICK and ARCHIBALD, JJ.
WERNICK, Justice.
On July 2, 1974 International Paper Company ("International")in accordance with requirements of the Site Location of Development Law ("Site Law"), 38 M.R. S.A. § 481, et seq., the Air Pollution Control Law ("Air Law"), 38 M.R.S.A. § 581, et seq., and the Water Pollution Control Law ("Water Law") 38 M.R.S.A. § 413, et seq.,filed with the Board of Environmental Protection ("Board") appropriate applications for approval of a major expansion of International's Androscoggin Mill in Jay, Maine, as well as the issuance, in relation thereto, of a "site" permit and "air emission" and "waste discharge" licenses. Shortly thereafter, the Board allowed one of the instant appellants, Natural Resources Council ("NRC"), to intervene as a party to the proceedings.
On September 25, 1974 the Board voted approval of a "draft" of findings of fact and an order granting International air emission and waste discharge licenses and a site permit.
On October 7, 1974 International requested the Board to change particular conditions of the licenses and permit. The Board responded, on October 23, 1974, with corrected findings of fact and a corrected order modifying the conditions of the licenses and permit.
Again, International requested changes, and the Board reopened the hearings for additional consideration of the conditions which should be attached to the licenses and permit.
On November 6, 1974 the Board permitted the Public Interest Research Group ("PIRG") and the Environmental Law Institute ("ELI") to intervene as parties.
These two organizations and NRC, the previously authorized intervenor, then took appeals to this Court from the Board's October 23, 1974 order and the findings supporting it.
On December 4, 1974, the Board made further findings of fact and issued an order again amending particular conditions of the air emission and waste discharge licenses. The three intervenors then took another appeal to this Court from the additional (amended) findings and order.
All of the appeals have been consolidated for disposition by this Court.

1.
This Court previously denied a motion of the Board seeking dismissal of the instant appeals on the ground that the only issues raised on appeal concern air and water quality and, hence, this Court lacks jurisdiction of the subject-matter of the appeals until they have first been considered by the Superior Court pursuant to Section 594 of the Air Law and Section 415 of the Water Law.[1]
In denying the Board's motion to dismiss, we stated that notwithstanding that the attack of the intervenors upon the legality of the Board's issuance of a "site location of development" permit was on grounds involving only the control of "air emissions" and "discharge into classified bodies of water", the appeals may fairly be *238 viewed as purporting to assert aggrievements arising from alleged illegalities in the issuance of a permit under the Site Lawas said illegalities are claimed to arise under criteria expressly delineated in the Site Law. Accordingly, we concluded that by virtue of Section 487 of the Site Law,[2] without need for prior appellate intervention of the Superior Court, this Court has a direct appellate jurisdiction of at least some facets of the subject-matter addressed by the instant appeals.
We take occasion now to expand upon the reasons supporting this conclusion.
The Site Law explicitly specifies particular respects in which air and water quality enter into the Board's regulatory functions to fulfill the purposes of the Site Law. Under Section 482(2) and Section 483 of the Site Law in any context in which a proposed development will require an air, or a water, license from the Board pursuant to the Air Law or the Water Law, the developer must also obtain a site permit. Section 484(3) of the Site Law further aims to protect interests in air and water quality by requiring the applicant for a site permit to establish that the proposed development will fit "harmoniously into the existing natural environment" and "will not adversely affect existing uses, scenic character, or natural resources in the municipality or in neighboring municipalities." Finally, Section 482(3) of the Site Law defines the "natural environment of a locality" to include the "character, quality and uses of land, air and waters in the area likely to be affected by . . . [a] development . . .."
In at least the above stated respects, then, claims relating to the subject-matter of air and water quality are plainly within the scope of regulation by the Board for the special purposes of the Site Law. They thus generate subject-matter issues capable of aggrieving persons in relation to interests of specific concern under the Site Law, thereby to render applicable the appellate jurisdiction of this Court in the first instance under Section 487 of the Site Law.

2.
However, that the issues raised in the present appeals, as directed to air and water quality matters, may be cognizable as a subject-matter appropriate for an appeal to the Law Court without prior resort to the Superior Court does not settle the further question whether the particular parties who purport to bring the appeals are "persons aggrieved", in relation to such subject-matter, within the meaning of Section 487 of the Site Law.
We proceed to consider this additional question which was not previously addressed, or decided, in our denial of the Board's motion to dismiss the appeals.
Two of the instant appellants, NRC and PIRG, claim aggrievement on the grounds that (1) the staff and organization of the NRC and PIRG are located in Augusta and members of PIRG attend school in Augusta and Farmington; (2) Augusta, Farmington and Jay, the site of International's proposed development, are all located in the Central Maine Air Quality Region as established under the Air Law; (3) thus, said persons breathe the air in that area which has been governmentally acknowledged as the area most likely to be *239 affected by the location of the proposed development.
We agree that this kind of particularized injury affecting the members of the staff and organization of the NRC and PIRG and other members of the PIRG, and which arises by virtue of their "use" of air in a region governmentally established for the purposes of controlling air pollution, constitutes an aggrievement relating specifically to the Site Law regulationsover and above the governmental regulatory interests as delineated in the Air Lawsufficient to entitle the NRC and the PIRG to invoke this Court's direct appellate jurisdiction under Section 487 of the Site Law. Under the Site Law the extent of the environmental area protected, as defined by the terms "neighboring municipalities" and "area likely to be affected", is largely dependent upon the type of environmental impact at issue. Assessing the meanings reasonably attributable to the above-mentioned concepts and the reasonable bounds of the potential scope for aggrievement in relation to the interests promoted by the regulation prescribed by the Site Law as to matters of air quality, we conclude that the Central Maine Air Quality Region governmentally delineated pursuant to the Air Lawin which International's proposed development is to be located and members of the NRC and PIRG reside and breathe the airhas sufficient relationship to regulatory concerns of the Site Law to constitute a basis for aggrievement to NRC and PIRG by the Board's issuance of a site permit for said development.

3.
On the merits, NRC and PIRG assert as a fundamental error of the Board in administering the Site Law that the Board failed to require International to prove, and itself omitted specifically to find, that the proposed development will not cause a substantial degradation of existing air quality. This position is claimed supported by (1) language of the general enabling statute, 38 M.R.S.A. § 361, that the Board shall "prevent the pollution of the air" and "prevent the diminution of the highest and best use of the natural environment", and (2) explicit provisions of the Site Law that (a) the developments to be allowed will have a "minimal adverse impact on the natural environment of their surroundings" and
"not adversely affect existing uses, scenic character, or natural resources in the municipality or in neighboring municipalities"
and (b) overall, the "public's health, safety and general welfare will be adequately protected."
Section 361 is the general statute establishing the Board of Environmental Protection. As such, it provides an abstract delineation of the fundamental policy concerns of the Site Law. We look upon Section 361, therefore, as itself creating no independently self-sufficient particular criteria, or mandates, to control the Board in its regulatory functions under the Site Law but, rather, as suggesting the spirit which infuses the criteria otherwise specifically prescribed by the Site Law thus to guide in the interpretation of them.
With this our focus, we turn to the particular criteria of the Site Law. We observe, initially, that in the entirety of the Site Law nothing is mentioned concerning the prevention of substantial degradation of existing air quality (the subject-matter as to which NRC and PIRG are claiming there should have been specific proof by International and a specific finding by the Board). Instead, as 38 M.R.S.A. § 481 sets forth the basic purpose of the Site Law:
"The . . . [Board of Environmental Protection] may exercise the police power of the State to control the location of those developments substantially affecting local environment in order to insure that such developments will be located in *240 a manner which will have a minimal adverse impact on the natural environment of their surroundings."
This language embodies two plain statements of legislative intent. First, recognizing that some developments "substantially affecting" the local environment "will be located" in the State, the Legislature intends that the Board shall function to control the location of development so that the "adverse impact" will be minimal. Second, the Legislature's emphasis in the Site Law is upon the location of development rather than the quality of air.
"The language of the [Site] Act and its clear underlying purpose reflect the Legislature's intention that a development with a particular propensity to damage the environment should not be located in areas where the environment is particularly incapable of sustaining the impact without public injury." In re Spring Valley Development, Me., 300 A.2d 736, 745 (1973)
The impact on air quality is thus only one of a multitude of factors material to the location of a particular development under the Site Law.
In furtherance of this policy of controlling the location of developments, Section 484 of the Site Law sets forth in mandatory terms four specific criteria which an applicant shall meet to obtain a site permit.
"The commission shall approve a development proposal whenever it finds that:
"1. Financial capacity. The developer has the financial capacity and technical ability to meet state air and water pollution control standards, and has made adequate provision for solid waste disposal, the control of offensive odors, and the securing and maintenance of sufficient and healthful water supplies.
"2. Traffic movement. The developer has made adequate provision for traffic movement of all types out of or into the development area.
"3. No adverse effect on the natural environment. The developer has made adequate provision for fitting the development harmoniously into the existing natural environment and that the development will not adversely affect existing uses, scenic character, or natural resources in the municipality or in neighboring municipalities.
"4. Soil types. The proposed development will be built on soil types which are suitable to the nature of the undertaking."
In the instant case the Board made specific affirmative findings as to each of these four criteria.
In the absence of any express requirement of the Site Law that the Board find that the development will not substantially degrade existing air quality in the area, NRC and PIRG argue that the necessity for such a finding is implied in the expressed mandate that the Board find "no adverse effect on the natural environment."
We find this argument unconvincing, at least as here sought to be applied.
In the instant situation the Board made the explicit finding:
"In view of the fact that the applicant proposes an expansion of an existing facility, which expansion will not materially alter the appearance of [the] facility, the Board finds that the applicant has made adequate provision for fitting the development harmoniously into the existing natural environment and that the development will not adversely affect the existing uses, scenic character or natural resources in the municipality or in neighboring municipalities."
Moreover, in conjunction with the issuance of the site permit, the Board, acting under provisions of the Air Law, had also ordered issuance of an air emission license. In issuing the site permit, the Board made express reference to the fact that it had *241 also ordered issuance of the air emission license and, as to the site permit, explicitly added the specification that the site permit is conditioned upon the compliance of the applicant with the "terms and conditions of its . . . air emission . . . [license]." In addition, the Board's amended findings stated that International's air emissions
"will be lower in all cases than the ambient air standards [of the Air Law] by a substantial margin."
Because of the Board's simultaneous consideration of the site permit and air emission license applications, and the Board's issuance of the site permit conditioned upon compliance with the air license standards, we hold that, here, an additional finding concerning air quality,specifically that existing air quality was not being substantially degradedwas not required by the Site Law. No special consideration of air quality, beyond that mandated by the more specific provisions of the Air Law, is, in ordinary course, necessary under the Site Law. Such a separate Site Law finding specifically relating to air quality might be necessary were the nature of the air quality aggrievement under the Site Law to introduce some factor distinctively, or uniquely, concerning the air quality aspects of a site location. In the case at bar, however, we discern no necessity for separate or special air quality findings in the Board's exercise of its responsibilities under the Site Law since, here, there were no localized claims regarding the proposed site different in kind or degree from the regional concerns of the Air Law.

4.
Having concluded that the Board sufficiently discharged its responsibilities under the Site Law, we turn to evaluate the other issues raised by NRC and PIRG in these appeals. These pertain to alleged errors by the Board in its determinations concerning provisions of the Air Law governing the issuance of the air emission license to International.
As previously observed (n. 1), Section 594 of the Air Law mandates that appellate review of these questions shall be, in the first instance, by the Superior Court. Thus, in by-passing the Superior Court and asking this Court to take initial appellate cognizance of issues relating to the Board's alleged errors in administering the Air Law, NRC and PIRG are, in effect, requesting this Court to exercise a type of "pendent" jurisdiction,a jurisdiction deriving as an appendage of the jurisdiction which reposes in this Court to decide Site Law questions without the prior appellate intervention of the Superior Court. We are urged to exercise such a pendent jurisdiction to decide all of the issues raised in the current litigation and thus dispose of the entirety of the instant controversy without subjecting the parties to the necessity of a multiplicity of appellate proceedings.
Although in other contexts this Court has had occasion to be concerned with the exercise of one form or another of "pendent" jurisdiction,[3] and even if this Court has power to assert an appeal jurisdiction "pendent" in nature concerning a subject-matter which, as here, is mandated *242 by statute to fall within an initial appeal jurisdiction of the Superior Courta question as to which we now intimate no opinion,we conclude that it would be inappropriate for us to exercise such "pendent" jurisdiction in the present circumstances.
The errors in the Board's administration of the Site Law and Air Law, as here claimed, do not generate for appellate evaluation a "single case" or even an essentially common factual subject-matter. As we explain in footnote 4, infra, our present disposition of the merits of the issues legitimately raised in the appeal to this Court under the Site Law does not decide the merits of any claims concerning air quality regulation under the Air Law. In disposing of the Site Law appeal, we have mentioned the Board's findings as they pertain to the Air Law only to establish that, as a matter of general course, once the Board has made such Air Law determinations and specifically incorporated them by reference as determinations relating also to the issuance of a site permit, the Board need not make an additional specific finding, to fulfill the mandates of the Site Law, of nondegradation of existing air quality. Thus, our reference to the Board's Air Law findings reinforces the point that the basic issues under the Air Law purportedly presented to this Court involve, as their essence, the interpretation of the Air Law rather than the Site Law and, therefore, as required by Section 594 of the Air Law, should be afforded initial appellate scrutiny in the Superior Court. Accordingly, we cannot permit NRC and PIRG to circumvent the appeal mandates of the Air Law merely because they have presented for this Court's original appellate scrutiny a legitimate Site Law issue of which this Court was obliged to take cognizance, if only to decide that it was without merit.
In short, while we have here been required to exercise a limited Site Law jurisdiction dealing in some respects with air quality, were we to exercise, in addition, a "pendent" jurisdiction to decide the issues raised concerning whether the Board acted correctly in administering the regulations of the Air Lawand thus allow a by-pass of the appeal to the Superior Court mandated by Section 594 of the Air Lawwe should be letting the "tail wag the dog." This we will not do, and, accordingly, in this Site Law appeal we do not reach the claims of NRC and PIRG that the Board made erroneous determinations concerning air emissions as specially regulated under the Air Law.[4]
The entry is:
Appeals denied.[5]
All Justices concur.
DELAHANTY, J., did not sit.
NOTES
[*] Weatherbee, J., sat at argument and participated in consultation, but died before the opinion was adopted.
[1] These sections provide explicitly that appeals from Board decisions involving the provisions of those laws, respectively, are required to go to the Superior Court in the first instance before an appeal lies to the Law Court.
[2] Section 487 of the Site Law reads:

"Any person aggrieved by any order of the Board of Environmental Protection, pursuant to this Article may within 30 days after notice of such order, appeal therefrom to the Supreme Judicial Court pursuant to the provisions of Rule 73(f) of the Maine Rules of Civil Procedure. The proceedings shall not be de novo. Review shall be limited to the application, the record of any hearing before and the order of the board. The court shall decide whether the board acted regularly and within the scope of its authority, and whether the order is supported by substantial evidence, and on the basis of such decision may enter judgment affirming or nullifying such determination."
[3] For example, once equity jurisdiction has attached, the Court exercising such equity jurisdiction may retain jurisdiction to decide the entire controversy, including those matters which would otherwise sound "at law." Whether this kind of pendent jurisdiction is to be exercised in a given situation, however, is ". . . permissive rather than peremptory", resting in the Court's discretion. Harlow v. Pulsifer, 122 Me. 472, 473, 474, 120 A. 621 (1923).

This Court has referred to another type of discretionary "pendent" jurisdiction, as exercised by federal courts to permit not only federal claims but also State claims to be decided in a single judicial proceeding when they "derive from a common nucleus of operative fact." See: White v. Edgar, Me., 320 A.2d 668, 673 (1974) quoting from United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
[4] Since in the limited Site Law jurisdiction we have exercised, we do not reach the claims of NRC and PIRG that the Board acted unlawfully under the Air Law in granting the air emission license, but leave such issue for the statutorily required appeal to the Superior Court (if NRC and PIRG see fit to take such appeal), we take the precaution to stress that in our disposition of the merits of the claims legitimately asserted to us by NRC and PIRG under the Site Law we have assumed, without deciding, that the Board's Air Law determinations are lawful and supported by substantial evidence.
[5] Our decision denying on the merits the Site Law appeals of NRC and PIRG makes unnecessary a decision by us concerning the more doubtful question whether ELI (the third appellant) is a "person aggrieved" within the purview of Section 487 of the Site Law entitled to have a review by this Court, without the prior interposition of the Superior Court, of particular water quality claims ELI has here purported to assert. We need not decide this question because, even if we assume that ELI is such "a person aggrieved", our decision herein disposing of the merits of the air quality questions raised by NRC and PIRG would govern the disposition of the merits of such ELI water quality contentions as are here legitimate subject-matter of a direct appeal to this Court under Section 487 of the Site Law.