2009 ME 56

**Paul L. NERGAARD et al.**

v.

**TOWN OF WESTPORT ISLAND.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 26, 2009.

Decided: June 2, 2009.

Paul L. Nergaard, Westport Island, ME, pro se.

Michael E. Stern, Westport Island, ME, pro se.

James N. Katsiaficas, Esq., Perkins Thompson, Portland, ME, for Town of Westport Island.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Majority: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Concurrence: ALEXANDER, J.

GORMAN, J.

[¶ 1] Paul L. Nergaard and Michael E. Stern appeal from a judgment of the Superior Court (Lincoln County, *Hjelm, J.*) affirming a decision by the Town of Westport Island Zoning Board of Appeals (Zoning Board) that the two men did not have standing to appeal a decision by the Planning Board concerning plans to improve the Town's boat-launching site. Because we conclude that the Zoning Board did not err as a matter of law in deciding that Nergaard and Stern were without standing, we affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] In the fall of 2006, the Westport Island Board of Selectmen submitted an application to the Planning Board to improve the Town's only public boat-launching site. The proposal, which called for improving the boat ramp and access road to the site and expanding the parking area, was projected to increase daily trips to and from the site by thirty-six vehicles during the peak season.

[¶ 3] Located at the intersection of Route 144 and Ferry Road, the boat-launching site is about one mile south of the bridge that provides the only access to and from the mainland. A study by the Maine Department of Transportation estimated that 1638 vehicles pass through the intersection every day in August, which is the Island's peak period.

[¶ 4] Although both Nergaard and Stern live on the Island, their properties are neither directly abutting nor within close proximity to the site.[1] However, they opposed the project and attended the Planning Board hearings to express their views. During the first public hearing on October 10, 2006, Nergaard, Stern, and two other men who attended the meeting to express their opposition, requested that the Planning Board grant them party status. The Planning Board voted in favor of granting party status to the four individuals because they all frequently travel Route 144 and must pass the boat-launching site.[2]

[¶ 5] Nergaard and Stern expressed their concerns that the increased use of the facility would worsen traffic conditions and seriously endanger their safety. They asserted that Ferry Road was not wide enough to accommodate the changes, which would permit boat trailers to travel in both lanes at the same time. The two

---

1. Nergaard and Stern never identified the exact location of their properties. However, they acknowledged that a tax map presented to the Zoning Board depicting the site and about forty surrounding properties did not include their lots.

2. The Town hired Attorney William Dale to advise the Planning Board during its consideration of the Town's application to improve the boat-launching site. According to the minutes of the public hearing on October 10, Attorney Dale advised the Planning Board that Nergaard, Stern, and the others had party status simply because they spoke during the meeting.

men also questioned the potential bias of a member of the Planning Board due to their belief that she was an employee of the Town, and thus had a conflict of interest.

[¶ 6] After a total of four public hearings, the Planning Board approved the project on May 14, 2007. Nergaard and Stern appealed the Planning Board's decision to the Zoning Board. The Town's attorney, James Katsiaficas, advised the Zoning Board on issues related to the appeal.

[¶ 7] The Zoning Board held a hearing on the appeal on July 5, 2007, and the question of whether Nergaard and Stern had standing to bring the appeal was among the first issues addressed. Attorney Katsiaficas attended the hearing and directed the Zoning Board to the Town's Shoreland Zoning Ordinance, which explains that only "aggrieved parties" can bring appeals.

[¶ 8] Nergaard and Stern argued that although they were not abutters to the site, they were aggrieved parties because their personal property was threatened due to the increased risk of traffic accidents at the frequently traveled intersection. The Zoning Board rejected this theory and dismissed the appeals based on a finding that Nergaard and Stern lacked standing. Specifically, the Zoning Board concluded that "[n]one of the [a]ppellants owns property abutting the Town's property" and they both failed to prove any "potential injury different from that suffered by the general public traveling over Route 144."

[¶ 9] On August 17, 2007, Nergaard and Stern appealed to the Superior Court pursuant to M.R. Civ. P. 80B.[3] The Town filed its opposition, by and through Attorney Katsiaficas, on September 12, 2007. Then, on September 21, 2007, Nergaard and Stern filed a motion to disqualify Katsiaficas as counsel for the Town, alleging that Katsiaficas had a conflict of interest having served as legal counsel to the Zoning Board.

[¶ 10] The court issued its order on July 29, 2008. In denying the motion to disqualify Katsiaficas, the court reasoned that because Katsiaficas did not function as a judge or as a nonjudicial adjudicative officer in his role advising the Zoning Board, his representation of the Town in the Rule 80B action did not violate the Maine Bar Rules. Additionally, the court concluded that the Zoning Board correctly determined that Nergaard and Stern lacked standing given that neither owns property abutting the site nor would sustain a particularized injury.

---

**3.** A third individual, E. Davis Allen, also filed an appeal with the Zoning Board but did not attend the hearing. Nergaard, who is an attorney, informed the Zoning Board at the start of the hearing that he would appear as Allen's representative, not his attorney. Allen subsequently joined the Rule 80B appeal to the Superior Court. However, the court dismissed his appeal based on a finding that neither Allen nor a person with lawful representational authority appeared at the Zoning Board hearing to represent his interests. Allen has not appealed the Superior Court's decision.

In its judgment on the Rule 80B appeal, the court incorrectly notes that Stern improperly signed the complaint and other submissions on behalf of Allen. Among their arguments on appeal, Nergaard and Stern contend that the court committed clear error in making this finding because it was Nergaard—not Stern—who signed for Allen. Although Nergaard and Stern are correct that it was Nergaard who signed for Allen and stated at the Zoning Board hearing that he also was there to represent Allen, the court's misstatement in its judgment is harmless error because Allen has not appealed the decision by the Zoning Board and because we review the Zoning Board's decision directly. *See* M.R. Civ. P. 61.

## II. DISCUSSION

### A. Standards of Review

■■■ [¶ 11] When the Superior Court acts as an intermediate court of appeals, we review directly the decision of the tribunal of original jurisdiction. *See Peregrine Developers, LLC v. Town of Orono,* 2004 ME 95, ¶ 9, 854 A.2d 216, 219. Here, the Zoning Board acted as the tribunal of original jurisdiction and conducted a de novo fact-finding process to decide the issue of standing. Therefore, we review directly the Zoning Board's decision to deny standing to Nergaard and Stern for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Id.*; *see also Brackett v. Town of Rangeley,* 2003 ME 109, ¶ 15, 831 A.2d 422, 427.

■■■ [¶ 12] Because the question of whether a party has standing to bring an administrative appeal depends on the language of the governing ordinance, our analysis requires us to interpret and apply the relevant sections of the Shoreland Zoning Ordinance for the Town of Westport Island. *See Nelson v. Bayroot, LLC,* 2008 ME 91, ¶ 9, 953 A.2d 378, 381 ("Whether a party has standing depends on the wording of the specific statute involved."). Our interpretation of the provisions of this Ordinance is a question of law that we review de novo. *Stewart v. Town of Sedgwick,* 2002 ME 81, ¶ 6, 797 A.2d 27, 29. "We examine the plain meaning of the language of the ordinance, and we construe its terms reasonably in light of the purposes and objectives of the ordinance and its general structure." *Id.*

### B. Shoreland Zoning Ordinance

[¶ 13] The Town of Westport Island Shoreland Zoning Ordinance states that the Zoning Board has authority "[t]o hear and decide appeals where it is alleged that there is an error ... by[ ] the Code Enforcement Officer or Planning Board." Town of Westport Island Shoreland Zoning Ordinance § 16(G)(1)(a) (2004). The Ordinance further states that only an aggrieved party can take an administrative appeal of a Planning Board decision to the Zoning Board. *Id.* § 16(G)(3)(a)(1). The Ordinance defines an aggrieved party as:

> an owner of land whose property is directly or indirectly affected by the granting or denial of a permit or variance under this Ordinance; a person whose land abuts land for which a permit or variance has been granted; or any other person or group of persons who have suffered particularized injury as a result of granting or denial of such a permit or variance.

*Id.* § 17.

■■ [¶ 14] Nergaard and Stern bore the burden of proving that they met the definition of aggrieved parties.[4] *See Gensheimer v. Town of Phippsburg,* 2005 ME 22, ¶ 18, 868 A.2d 161, 166. Because the two men conceded at the Zoning Board hearing that they did not claim to be abutters and they do not raise this particular issue on appeal, we do not address it. *See Brown Dev. Corp. v. Hemond,* 2008 ME

---

4. Nergaard and Stern's primary argument is that they do not have to prove that they are aggrieved parties because the Ordinance gives the Zoning Board authority to hear any appeal when an error by the Planning Board or code enforcement officer is alleged. In support of this argument, they cite the first paragraph of the appeals provision in the Ordinance, which states that the Zoning Board has authority "to hear and decide appeals where it is alleged that there is an error ...." Town of Westport Island Shoreland Zoning Ordinance § 16(G)(1)(a) (2004). Because subsequent language limits who can take an appeal and defines "aggrieved party," *id.* §§ 16(G)(3)(a)(1), 17, this argument has no merit.

146, ¶ 3 n. 2, 956 A.2d 104, 106 (declining to reach conclusions on issues not raised on appeal). Instead, Nergaard and Stern argue that they have standing to appeal to the Zoning Board because (1) the Planning Board granted them party status; and (2) each has demonstrated a particularized injury as a resident of the Island who frequently drives by the boat-launching site to enter and exit the Island. We address these two contentions separately below, and ultimately conclude that neither one provides a basis for vacating the decision of the Zoning Board.

## C. Party Status

■ [¶ 15] The record indicates that the Planning Board granted party status to Nergaard and Stern because they live on the Island and frequently travel by the site, and because they attended the Planning Board hearings and expressed their opposition to the proposed project. However, the Planning Board's decision to grant party status to Nergaard and Stern at the proceedings before it does not demonstrate that Nergaard and Stern are "aggrieved parties" entitling them to appeal to the Zoning Board within the meaning of section 16(G)(3) of the Zoning Ordinance.

■ [¶ 16] To establish standing, one must demonstrate not only that he or she had party status at the administrative proceedings, but, *in addition*, that he or she has suffered a particularized injury or harm. *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 11, 879 A.2d 1007, 1012. Being allowed to make a case to the Planning Board does not relieve one of showing the particularized injury necessary to require the Zoning Board to accept an appeal. Here, Nergaard and Stern have no property affected directly or indirectly by the boat ramp permit, *see Lakes Environmental Association v. Town of Naples*, 486 A.2d

91, 93 (Me.1984), and no economic interest, *see Halfway House, Inc. v. City of Portland*, 670 A.2d 1377, 1381 (Me.1996), that could give them standing. They rely only on their status as members of the driving public.

## D. Particularized Injury

■ [¶ 17] Nergaard and Stern essentially argue that they have a particularized injury merely because they live on the Island and drive by the site frequently, risking death, injury, and damage to their property. They argue that although any resident of the Town could claim these same injuries, the injuries are particularized because they affect each resident individually and they are distinct from any generalized injury to the public. Additionally, Nergaard and Stern argue that they demonstrate a particularized injury because they are, in part, challenging the validity of the process employed by the Zoning Board by questioning the bias of one of its members. The Town argues that any potential injury suffered by Nergaard and Stern cannot be labeled as particularized given that more than 1600 people drive by the site every day.

■ [¶ 18] A particularized injury occurs when a judgment or order adversely and directly affects a party's property, pecuniary, or personal rights. *Anderson v. Swanson*, 534 A.2d 1286, 1288 (Me. 1987); *see also Halfway House, Inc.*, 670 A.2d at 1381 (holding that potential economic injury that results from government action is sufficient to confer standing). A person suffers a particularized injury only when that person suffers injury or harm that is "in fact distinct from the harm experienced by the public at large." *Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me.1984). For example, we have held that in the context of disputes involving an abutting landowner,

the threshold for demonstrating a particularized injury is minimal. *Roop v. City of Belfast*, 2007 ME 32, ¶ 8, 915 A.2d 966, 968. Additionally, standing has been liberally granted to people who own property in the same neighborhood as the property that is subject to a permit or variance. *See Singal v. City of Bangor*, 440 A.2d 1048, 1050 (Me.1982).

[¶ 19] Here, neither Nergaard nor Stern asserts that his real property abuts, is in the same neighborhood, or is even in the same vicinity as the boat ramp property. Nergaard and Stern therefore make no claim that their properties are affected in any way by the Planning Board's decision to grant the permit. They assert only the harm that they will suffer as members of the driving public. They allege that they travel on Route 144 daily, and that the boat ramp project will cause dangerous traffic conditions on Route 144 at its intersection with Ferry Road.

[¶ 20] Nergaard and Stern are not unique in their use of Route 144; 1638 vehicles pass by the boat ramp location each day during the summer months. There is no difference between the potential harm asserted by Nergaard and Stern and the potential harm to these 1638 drivers and to their passengers—members of the public—who use the same road on a daily basis. Nor is that harm "distinct" from the potential harm to every person who lives on or visits Westport Island.

[¶ 21] Contrary to Nergaard's and Stern's assertions, our decisions in *Fitzgerald v. Baxter State Park Authority*, 385 A.2d 189 (Me.1978); *In the Matter of International Paper Co., Androscoggin Mill Expansion*, 363 A.2d 235 (Me.1976); and

*Roop*, 2007 ME 32, 915 A.2d 966, do not support a decision to grant standing to them. In *Fitzgerald*, five individuals demonstrated that the agency's actions would adversely and directly affect their personal rights to the use and enjoyment of Baxter State Park. 385 A.2d at 196–97. Unlike Nergaard and Stern, these plaintiffs were not merely members of the general public. They were "actual users of the Park," and thus suffered a particularized injury as a result of the agency's action in clearing timber from the Park, an injury that other Maine citizens could not claim. *Id.* In *International Paper Co.*, environmental and public interest groups who intervened at the administrative level appealed under a site location development statute with less stringent standing language than the Westport Island Zoning Ordinance. 363 A.2d at 238. Moreover, *International Paper Co.* involved a permit issued under a statute enacted to protect certain areas from environmental hazards, and the plaintiffs were located in the areas that the statute was designed to protect. *Id.* at 238–39. Finally, although our decision in *Roop* broadens standing requirements by holding that a person who challenges the validity of the *process* used by the agency has demonstrated a particularized injury, based on the potential infringement of that person's right to participate in the government process, the holding is based ·on the plaintiff's status "as citizens of Belfast owning land that abuts the new district" that was created by the agency's actions. 2007 ME 32, ¶ 11, 915 A.2d at 969. Nergaard and Stern, again, do not own property that is anywhere near the boat ramp property.[5]

---

5. Nergaard and Stern also argued that they were wrongfully denied standing because the Zoning Board improperly relied on a letter from a recused member of the Planning Board, expressing his opinion that Nergaard

and Stern lacked standing to bring the appeal. Again, because neither Nergaard nor Stern owns property abutting or in the same vicinity as the boat ramp, this unfounded allegation by Nergaard and Stern that the Zoning

[¶ 22]  Given the particular facts and circumstances of this case, neither Nergaard nor Stern has demonstrated a particularized injury.  Therefore, the Zoning Board did not err as a matter of law in deciding that neither Nergaard nor Stern had standing to appeal.

### E. Motion to Disqualify

[¶ 23]  We next consider Nergaard's and Stern's argument that the court erred in denying the motion to disqualify the Town's attorney from representing the Town in the Rule 80B proceedings.

[¶ 24]  Our review of orders disqualifying or refusing to disqualify counsel is highly deferential.  *See Estate of Markheim v. Markheim,* 2008 ME 138, ¶ 27, 957 A.2d 56, 62; *see also Butler v. Romanova,* 2008 ME 99, ¶ 11, 953 A.2d 748, 750.  We will not disturb a court's decision on a motion to disqualify if the record reveals a sound basis for the decision.  *Butler,* 2008 ME 99, ¶ 11, 953 A.2d at 750–51.

[¶ 25]  Nergaard and Stern argue that Attorney Katsiaficas should have been barred from representing the Town in the Rule 80B action before the Superior Court because he had served as an advocate and legal advisor to the Zoning Board on the same matter.  The Maine Bar Rules do prohibit attorneys from serving certain dual roles.  Specifically, Rule 3.4 states:

> A lawyer shall not commence representation in a matter in which the lawyer participated personally and substantially as a judge or judicial law clerk.  A lawyer shall not commence representation in a matter in which the lawyer participated personally and substantially as a nonjudicial adjudicative officer, ar-

bitrator . . . or law clerk to such a person, unless all parties to the proceeding give informed consent.

M. Bar R. 3.4(g)(2)(i).

[¶ 26]  In this situation, the Town attorney's role in advising the Zoning Board and representing the Town at the Rule 80B proceeding did not conflict.  The Zoning Board is a branch of the Town; Attorney Katsiaficas was simply doing his job as the Town's legal representative when he advised the Zoning Board at its hearing.  He did not act in a judicial or quasi-judicial capacity, and Rule 3.4 is not implicated here.  Therefore, the motion to disqualify was properly denied.

The entry is:

Decision of the Westport Island Zoning Board of Appeals is affirmed.  Judgment on motion to disqualify affirmed.

ALEXANDER, J., concurring.

[¶ 27]  I concur in and join the Court's opinion.  It accurately states the law addressing the prerequisites to attain aggrieved party status to give standing to appeal from municipal administrative decisions.  I write separately only to observe that this opinion necessarily narrows the criteria for person aggrieved status that are articulated in *Fitzgerald v. Baxter State Park Authority,* 385 A.2d 189 (Me. 1978).

[¶ 28]  The Court's opinion at paragraph 20 states that *Fitzgerald* can be distinguished from the instant case.  Such a distinction is not possible.  *Fitzgerald* involved a claim by residents of the State who asserted that they were users of Baxter State Park and, based on that user status, were persons aggrieved who suf-

Board improperly considered the opinion of an excused Planning Board member does not

rise to the level of a particularized injury.

fered a particularized injury as a result of the Baxter State Park Authority's timber clearing practices.

[¶ 29] The Court's opinion suggests that *Fitzgerald* is distinguishable because the *Fitzgerald* plaintiffs claimed an adverse affect to their "personal rights to the use and enjoyment of Baxter State Park." The Court observes that "unlike Nergaard and Stern, these [*Fitzgerald*] plaintiffs were not merely members of the general public," they were "actual users of the Park." However, while characterizing their capacity to use the park as "personal rights," in fact, the *Fitzgerald* plaintiffs demonstrated no greater right to use Baxter State Park than any other member of the public who might choose to use the park. The "rights" at issue were the public "right" to use a public park—or a public road.

[¶ 30] It is reasonable to expect that in the course of a year, many thousands of members of the public are "actual users" of Baxter State Park. That population is undoubtedly far greater than the population of Westport Island, where the plaintiffs in this case reside. In that sense, the residents of Westport Island who do and must use the road by the boat ramp to get to and from their homes are a much more defined and smaller population than the users of Baxter State Park. They have a right to use that road to the same or greater extent than the public has a right to use Baxter State Park. If *Fitzgerald* remains good law, the plaintiffs here would have standing to challenge the Town's action that, they allege, could affect traffic on the road that provides access to their homes.

[¶ 31] Today's opinion denies the plaintiffs "drive by standing" as persons aggrieved. It holds, in essence, that one's status as a user of a public facility, even a frequent user, does not create a status

sufficiently distinct from any member of the public to become a "person aggrieved" with standing to challenge in court an action that, allegedly, may affect one's use and enjoyment of the public facility. This holding necessarily restricts our holding in *Fitzgerald* which found "person aggrieved" status based only on a person's claim to be a user or frequent user of a public facility.